## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**BRUNSON ROBERTS**                                                    **PLAINTIFF**
**ADC #127841**

### NO. 3:20-cv-00391-KGB-ERE

**DEXTER PAYNE,** *et al.*                                            **DEFENDANTS**

### ORDER

Pending before the Court is Plaintiff Brunson Roberts' "objection to signing medical release form" (*Doc. 120*), which the Court treats as a motion for reconsideration of the Courts' March 31, 2022 Order (*Doc. 116*) directing Mr. Roberts to sign an authorization to allow Defendants to obtain his health information.

For the reasons explained below, the Court, upon further consideration, finds that the previously proposed medical release is far too broad and vacates that portion of its March 31 Order directing Mr. Roberts to sign it.

### I.    Background

#### A.    Mr. Roberts' Retaliation Claims

A recitation of the facts supporting Mr. Roberts' pending claims is helpful to put the discovery issues in context.

In May 2020, Mr. Roberts broke his finger while defending himself from an inmate attack. *Doc. 2 at 6.* He did not report the attack because he believed he would

lose his class status and chances for parole.[1]  *Id.* For the same reason, Mr. Roberts told medical staff that he injured his finger while playing basketball. *Id.*

On September 9, 2020, four months after he broke his finger, Mr. Roberts filed a grievance complaining that the number of officers assigned to his barracks was inadequate to protect inmates. *Id. at 21.* In addition, he complained that he had suffered a broken finger because he was forced to defend himself against aggressive inmates. *Id.*

Between September 9 and October 31, 2020, a series of events occurred which Mr. Roberts contends amounted to retaliation for him filing a grievance. First, Defendant Ramsey placed him in a "vigorous" substance abuse treatment program ("SATP") at the Grimes Unit.  *Id. at 9.* Mr. Roberts contends that he had mental health issues that made his SATP placement inappropriate, and he lost his class status for refusing to participate in the program. *Id.*

After Mr. Roberts lost his class status, Defendant Ramsey repeatedly changed his barracks assignment. *Id. at 10.* After receiving notice that he was scheduled to move to Barracks 13, Mr. Roberts submitted a grievance stating that he had a known enemy there. *Id. at 28.* Defendant Page denied the grievance for the stated reason that an investigation, conducted by Defendant Harmon, had revealed that Mr.

---

[1] Mr. Roberts alleges: "Even if you are in the right[,] you are written a disciplinary so the administration can cover themselves to make you look guilty of a rule violation." *Doc. 2 at 6.*

Roberts falsified information that he had an enemy in Barracks 13. *Id. at 29*. In addition, Mr. Roberts received a major disciplinary and was assigned to punitive isolation for submitting false information. *Id. at 10, 35*.

Subsequently, Mr. Page transferred Mr. Roberts to a dangerous barracks, where an inmate attacked him on October 26, 2020. *Id*. After the attack, Defendants Baker, Wilson, Morton, and Page allegedly falsified disciplinary charges against Mr. Roberts. *Id. at 10-11*.

Based on these alleged facts, Mr. Roberts is proceeding on claims that: (1) Defendants Harmon, Baker, Wilson, Morton, and Page retaliated against him for filing the September 9, 2020 grievance complaining about inadequate security; and (2) Defendants Payne, Young, and Page failed to take any corrective action regarding the alleged retaliation. *Docs. 2, 6, 8*.[2]

### B.   The Dispute Over The Medical Release

On March 24 and March 29, 2022, Defendants filed motions and supporting briefs asking the Court to compel Mr. Roberts to execute an Authorization for Release of Health Information ("medical release"). *Docs. 112, 113, 114, 115*. On March 31, 2022, the Court granted Defendants' motions and provided Mr. Roberts

---

[2]    The Court previously dismissed an additional claim that Mr. Roberts was attacked by another inmate in May 2020 and broke his finger because Defendants failed to protect him. *Docs. 31, 61*. In dismissing that claim, the Court stated: "Because the supporting documents alerting Defendants to inadequate security . . . were written months after the attack, any alleged failure to act could not have caused Mr. Roberts's [finger] injury." *Doc. 31 at 3*.

seven days to sign the proposed medical release or risk dismissal of this lawsuit. *Doc. 116 at 6*.

On April 11, 2022, Mr. Roberts filed the motion now before the Court objecting to signing the medical release on grounds that it is too broad. *Doc. 120*.

Upon reconsideration, and for reasons that follow, the Court agrees that the medical release is overly broad.

## II.   Discussion

Under Rule 26(b)(1) of the Federal Rules of Civil procedure, which governs the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

In keeping with this generous standard, parties are permitted to fully investigate the relevant facts to "gain an understanding of the key persons, relationships, and evidence in a case[,]" *Sentis Group, Inc. v. Shell Oil Co*., 763 F.3d 919, 926 (8th Cir. 2014). However, discovery must be proportional to the needs of the case. *Vallejo v. Amgen*, Inc., 903 F.3d 733, 742 (8th Cir.  2018) (quoting *Carr v. State Farm Mut. Auto. Ins., Co.*, 312 F.R.D. 459, 468 (N.D. Tex. 2015) ("[A] court can—and must—

4

limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit—and the court must do so even in the absence of a motion.").

Defendants' medical release seeks "<u>ALL</u>" information and records concerning Mr. Roberts' physical and mental condition *for the past fifteen years*. In addition, the release authorizes Defendants to receive all of Mr. Roberts' medical information and makes no effort to limit the disclosure to medical information that arguably has some relevance to the claims and defenses in this case. For example, the release authorizes Defendants to obtain "any information related to sexually transmitted diseases, HIV or AIDS-related illnesses," a topic with no apparent relevance to the issues in this case. *Doc. 112-1*.

Defendants' motions to compel, which the Court initially granted, argued that Mr. Roberts alleged "multiple physical injuries that he sustained at the hands of the Defendants" and that "[t]here can be no real dispute that the medical records are evidence of Mr. Robert's injuries, or lack thereof, which are clearly related to the claims and defenses in this case." *Doc. 115, at 3*. After careful review and reconsideration in light of Mr. Roberts' arguments, the Court disagrees on all points.

First, Mr. Roberts has *never* alleged that he sustained physical injuries "at the hands of" Defendants. Second, the temporal scope of the medical request goes far beyond seeking material relevant to any party's claim or defense. The complained-of conduct occurred during September and October 2020, but Defendants seek medical records *for the past 15 years*. Third, there are *no* allegations in this case regarding sexually transmitted diseases or other matters sought in the medical release.

In support of his motion for reconsideration, Mr. Roberts rightly argues that "all [of his] medical records are not needed for this lawsuit." *Doc. 120 at 1*. He further contends, that "Defendants are using a claim that was dismissed to try and seek medical records" and that he "will release what is specifically needed for trial . . . ." *Id. at 2*.

In his complaint, Mr. Roberts seeks compensatory and punitive damages, but he fails to specify any mental or physical injuries proximately caused by Defendants' alleged conduct. However, in response to Defendants' Interrogatory No. 10, asking Mr. Roberts to specify any physical, emotional or other injuries that he claims resulted from the acts and occurrences alleged in his complaint, he answered: "Reinjured my broken finger and P.T.S.D. from being attacked. This incident made my mental health conditions worse." *Doc. 112-2 at 7*.

The Court declines to draft a medical  release appropriate for this case, which

is a task for Defendants. While medical records regarding Mr. Roberts' mental health and any possible reinjury to his finger[3] appear to be within the scope of permissible discovery, the temporal scope of such records must be limited to a reasonable period of time.[4]

IT IS THEREFORE ORDERED that:

1.      The Court, on reconsideration, vacates that portion of its March 31, 2022 Order (*Doc. 116*) directing Mr. Roberts to sign Defendant's previously proposed medical release. Defendants must propose a new medical release consistent with this Order.

1.      ***Within 7 (seven) days*** from the entry date of this Order. Defendants must provide Mr. Roberts with a new proposed medical release.

2.      ***Within 7 (seven) days*** of receiving the revised medical release from Defendants, Mr. Roberts must either: (1) sign the revised medical release, or (2) file specific objections to the medical release.

---

[3] The Court disagrees with Mr. Roberts' contention that Defendants seek medical records based on his previously dismissed failure-to-protect claim.  In support of that claim, Mr. Roberts alleged that in May 2020, Defendants failed to protect him from an inmate attack, which caused him to defend himself and break his finger.  Although the Court dismissed that claim and found that Defendants' conduct could not have caused Mr. Roberts' finger injury, Mr. Roberts now indicates that he seeks damages related to an alleged reinjury of the finger he broke in May 2020.

[4] The Court hereby puts Defendants and their counsel on notice that a fifteen-year period of time is presumptively disproportional to the needs of any prisoner civil rights litigation.

IT IS SO ORDERED this 13th day of April, 2022.

_____
UNITED STATES MAGISTRATE JUDGE