## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**BRUNSON ROBERTS**                                                          **PLAINTIFF**
**ADC #127841**

### NO. 3:20-cv-00391-KGB-ERE

**DEXTER PAYNE,** *et al.*                                                    **DEFENDANTS**

### RECOMMENDED DISPOSITION

## I.    Procedures for Filing Objections

This Recommendation has been sent to Judge Kristine G. Baker. Any party may file objections if they disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and include the factual or legal basis for the objection.

To be considered, objections must be filed within 14 days. If you don't object, you risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record.

## II.    Background

Plaintiff Brunson Roberts, an inmate currently incarcerated at the Maximum Security Unit ("MSU") of the Arkansas Division of Correction ("ADC"), filed this lawsuit *pro se* under 42 U.S.C. § 1983. *Doc. 2.* Mr. Roberts claims that, during his confinement at the ADC's Grimes Unit: (1) Defendants Raylina Ramsey, Zackery

Harmon, Nicholas Wilson, Jasmina Morton, and Clinton Baker retaliated against him from September through October 2020 for filing a grievance complaining about inadequate security at the Grimes Unit; and (2) Defendants Dexter Payne, Lewis Young, and Joe Page failed to take any corrective action regarding the alleged retaliation.[1] *Docs. 2, 6, 8.*

Pending before the Court is Defendants' motion for summary judgment, brief in support, and statement of undisputed facts. *Docs. 150, 151, 152.* In their motion, Defendants argue that: (1) Mr. Roberts failed to fully exhaust his administrative remedies regarding his retaliation claims against Defendants Ramsey, Harmon, Wilson, Morton, and Baker; (2) all Defendants are entitled to sovereign immunity on Mr. Roberts' official capacity claims against them seeking money damages; and (3) all Defendants are entitled to qualified immunity. Mr. Roberts has responded to Defendants' motion and it is ripe for review.[2] *Doc. 166.*

For the reasons stated below, Defendants' motion for summary judgment should be granted.

---

[1] The Court previously dismissed, for failure to exhaust administrative remedies, Mr. Roberts' claims against Defendant William Straughn. *Doc. 105.*

[2] In his response to Defendants' motion, Mr. Roberts asserts for the first time a procedural due process claim and a double jeopardy claim. However, no such claims are before the Court. Accordingly, these "claims" will not be discussed further. See *N. States Power co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) (where complaint contained no allegations that would notify defendant of claim, party could not manufacture claim late in litigation to avoid summary judgment).

2

## III.  **Discussion**:

### A.    **Summary Judgment Standard**

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if - but only if - the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

### B.    Exhaustion

Defendants first argue that Mr. Roberts failed to fully exhaust his retaliation claim against Defendants Ramsey, Harmon, Wilson, Morton, and Baker. The Court must first address this argument before addressing the merits of Mr. Roberts claims. See *Davis v. Harmon*, 2010 WL 3259378, (8th Cir.  Aug. 19, 2010) (unpublished opinion) (holding that the trial court erred when it dismissed the case, with prejudice, on the merits without first considering the exhaustion issue, and dismissing without prejudice); *Barbee v. CMS*, 2010 WL 3292789 (8th Cir. Aug. 23, 2010) (unpublished opinion).

The Prison Litigation Reform Act ("PLRA") requires the Court to dismiss any claim raised that was not fully exhausted *before* filing a civil lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a) (declaring, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, the PLRA required Mr. Roberts to satisfy the ADC's requirements for raising and administratively exhausting his claims against Defendants before bringing this action.[3]

Defendants submit the affidavit of April Gibson, the ADC Inmate Grievance Supervisor, who states that Mr. Roberts filed five grievances during the time period relevant to this lawsuit: (1) GR-20-677; (2) GR-20-752; (3) GR-20-768; (4) GR-20-789; and (5) GR-20-794. *Doc. 150-11 at 6-8*. She explains that, because Mr. Roberts did not raise a retaliation claim against Defendants Ramsey, Harmon, Wilson, Morton, or Baker in those grievances, he has not fully exhausted his retaliation claims against those Defendants. *Id. at 8*. The Court disagrees.

In grievance GR-20-677, Mr. Roberts complained that, based on the inadequate staffing of the barracks, he suffered a broken finger "from defending myself from aggressive inmates." *Doc. 150-13 at 1*. He alleged that Defendant Page, Assistant Warden Davis, and Defendant Young were deliberately indifferent to his safety. Defendants Ramsey, Wilson, Harmon, Morton, and Baker are not referenced

---

[3] There are exceptions to the exhaustion requirement, but they are few and narrow in scope. For example, an inmate's subjective belief about the futility of the exhaustion process or her misunderstanding about the process are irrelevant in determining whether administrative procedures are available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

in that grievance, nor does Mr. Roberts claim that those Defendants retaliated against him in this grievance. Accordingly, although Mr. Roberts fully exhausted this grievance, it is not relevant to his pending retaliation claim against Defendants Ramsey, Harmon, Wilson, Morton, or Baker.

In grievance GR-20-752, Mr. Roberts complained that, in October 2020, Defendant Wilson attempted to assign him to 13 barracks where a known enemy of his was housed. *Doc. 15-14 at 1*. Although Mr. Roberts identifies Defendant Wilson in that grievance, he does not state that Defendant Wilson attempted to assign him to another barracks in retaliation for exercising any constitutional right. Accordingly, again, although Mr. Roberts fully exhausted this grievance, it is not relevant to his pending retaliation claim against Defendants Ramsey, Harmon, Wilson, Morton, or Baker.

In grievance GR-20-768, Mr. Roberts complained that "Classification at Grimes" assigned him to the SATP program in retaliation for his use of the grievance procedure. *Doc. 150-17 at 1*. Mr. Roberts' complaint identifies Defendant Ramsey as a "classification officer." *Doc. 2 at 2*. Furthermore, although Defendants fail to provide the Court all appeal papers related to this grievance, it appears that ADC officials were able to fully investigate this grievance. *Doc. 150-17 at 1-2*. Prison officials could have rejected grievance this based on Mr. Roberts' failure to identify the personnel involved, but they did not. See *Hammett v. Cofield*, 681 F.3d 945, 947

(8th Cir. 2012) (PLRA's exhaustion requirements are satisfied if grievance is considered on the merits, even if it could have been denied for procedural deficiencies); *Daniels v. Hubbard*, 2015 WL 9222627, at 1–2 (E.D. Ark. 2015); and *Bower v. Kelley*, 494 Fed. Appx. 718 (8th Cir. Dec. 13, 2012) (per curiam). Accordingly, Defendants have not satisfied their burden to prove that Mr. Roberts failed to fully exhaust his retaliation claim against Defendant Ramsey.

In grievance GR-20-789, Mr. Roberts complained that the "administration at Grimes Unit" retaliated against him for filing grievance GR-20-677 referenced above. *Doc. 150-18 at 1*. He alleged that Defendants Payne, Young, and Page failed to adequately train and supervise their staff by allowing ADC officers to retaliate against him. *Id*. Mr. Roberts did not identify Defendants Ramsey, Harmon, Wilson, Morton, or Baker in this grievance. While the Court is not aware whether any of these Defendants are considered "administration at the Grimes Unit,"[4] ADC officials fully investigated this grievance and noted, "you have failed to show that you have been retaliated against in any manner." *Doc. 2 at 37*. As a result, ADC officials again fully investigated a procedurally flawed grievance. Accordingly, Defendants have

---

[4] In Mr. Roberts' original complaint, he identifies Defendants Harmon as a lieutenant at the Grimes Unit. Doc. *Doc. 2 at 2*. In addition, in his original complaint, while describing the events that occurred at the Grimes Unit, he identifies Defendants Baker as a lieutenant, Defendant Wilson as a corporal, and Defendant Morton (originally identified as Morlton) as a corporal.

not satisfied their burden to prove that Mr. Roberts failed to fully exhaust his retaliation claim against Defendants Ramsey, Harmon, Wilson, Morton or Baker.

In grievance GR-20-794, Mr. Roberts complained that he was attacked by another inmate based on the inadequate security at the Grimes Unit. He states, "I'm receiving grave retaliational[sic] acts that are putting my life in jeopardy." *Doc. 150-19 at 1*. In this grievance Mr. Roberts failed to identify Defendants Ramsey, Harmon, Wilson, Morton or Baker, nor did he allege that these Defendants retaliated against him for his use of the grievance procedure. Accordingly, although Mr. Roberts fully exhausted this grievance, it is not relevant to his pending retaliation claim against Defendants Ramsey, Harmon, Wilson, Morton, or Baker.

Based on exhausted grievances GR-20-768 and GR-20-789, the Court declines to dismiss, without prejudice, Mr. Roberts' retaliation claims against Defendants Ramsey, Harmon, Wilson, Morton or Baker.  Accordingly, the Court will address those claims on the merits.

### C.    Sovereign Immunity Bars Official Capacity Claims

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, Mr. Roberts' claims against Defendants for money damages in their official capacity are barred by sovereign immunity.

### D.    Individual Capacity Claims

### 1.    Factual Background[5]

Mr. Roberts alleges that, after he filed grievance GR-20-677 on September 9, 2020, complaining about inadequate security at the Grimes Unit: (1) Defendants Ramsey, Harmon, and Wilson retaliated against him by moving him to "probability barracks known for chaos and violence" (*Doc. 2 at 8*); (2) Defendant Ramsey violated ADC policy by assigning him to the substance abuse treatment program (SATP) in retaliation for writing grievance GR-20-677 and, following his refusal to be placed in the SATP program, consistently moved him from barracks to barracks (*Doc. 150-1 at 6*); (3) Defendant Harmon assigned him to punitive isolation after he submitted grievance GR-20-752 on October 14, 2020 (*Doc. 2 at 9-10*); and (4) Defendants Wilson, Morton, and Baker falsified disciplinary papers in retaliation for Mr. Roberts' use of the grievance procedure (*Doc. 150-1 at 9*).

In addition, Mr. Roberts alleges that Defendants Payne, Young, and Page failed to adequately supervise Defendants Ramsey, Harmon, Wilson, Morton, and Baker to prevent or correct the retaliatory conduct.[6]

---

[5] Unless otherwise specified, these facts are taken from: (1) Mr. Roberts' original complaint (*Doc. 2*); (2) Mr. Roberts' amended complaint (*Doc. 6*); and (3) Mr. Roberts' deposition testimony (*Doc. 150-1*).

[6] In his deposition, Mr. Roberts also stated that Defendants Payne, Young, and Page retaliated against him based on "grievances in general." *Doc. 150-1 at 12-13*. However, Mr. Roberts' claims against Defendants Payne, Young, and Page have consistently been described as failure to supervise or corrective-inaction claims. *Docs. 8, 30, 69*. The Court will not allow Mr.

Mr. Roberts admitted in his deposition that he "infers" that all Defendants retaliated against him and conceded that Defendants' alleged retaliatory conduct has not stopped him from filing other grievances. *Id. at 13- 14*.

### 2.    Retaliation Claims Against Defendants Ramsey, Harmon, Wilson, Morton, Baker

To succeed with his retaliation claims, Mr. Roberts must show that: (1) he engaged in protected activity; (2) Defendants took adverse action against him "that would chill a person of ordinary firmness" from engaging in that activity; and (3) retaliation was the motivating factor for the adverse action. *In re Kemp*, 894 F.3d 900, 906 (8th Cir. 2018); *Lewis v. Jacks*, 486 F.3d 1026, 1028 (8th Cir. 2007). Mr. Roberts shoulders a "heavy evidentiary burden" to establish retaliation, and "[m]erely alleging that an act was retaliatory is insufficient." *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007).

Each Defendant asserts qualified immunity on Mr. Roberts' retaliation claims and seeks summary judgment in his or her favor. Qualified immunity protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense at the summary judgment stage, a

---

Roberts to add a claim for retaliation against them at this point in the case.

plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). In deciding the question of qualified immunity, the Court cannot treat Defendants as "one unified group" but must consider each Defendant's conduct to determine whether evidence against that "*individual officer* [is] sufficient to overcome qualified immunity." *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (quoting *Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013)).

### a.    Defendant Ramsey

Defendants attach Defendant Ramsey's declaration in support of their motion for summary judgment. *Doc. 150-2*. According to her testimony, at all times relevant to this lawsuit, she served as Classification and Assignment Officer at the Grimes Unit. *Id. at 1*. She was not involved in determining which inmates should be assigned to the SATP. *Id at 3*. Rather, on September 18, 2020, ADC employee Angela Williams emailed Defendant Ramsey a list of inmates to be transferred to 12 barracks to begin participation in the SATP program. *Id*. Mr. Roberts was included on that list. When Mr. Roberts refused to participate in the SATP program, Defendant Ramsey moved him to 15 barracks. *Id*. Defendant Ramsey testified that

she and Mr. Roberts "never discussed or communicated about his grievance regarding insufficient security at the Grimes Unit." *Id at 4*.

In his deposition, Mr. Roberts concedes that: (1) he did not speak with Defendant Ramsey about the September 9, 2020 grievance concerning inadequate security at the Grimes Unit; (2) he did not identify Defendants Ramsey in that grievance; and (3) Defendant Ramsey was not involved in security at the Grimes Unit. *Doc. 150-1 at 5-6, 8*. Mr. Roberts speculates that, once an inmate files a grievance regarding an ADC officer's conduct, that officer tells the other officers to "make [the inmate's] life hard in prison." *Id. at 5*. He admits that he "assumes" that Defendant Ramsey was aware of grievance GR-20-677. *Id. at 6*.

Mr. Roberts has failed to come forward with any evidence contradicting Defendant Ramsey's testimony regarding her lack of involvement in assigning Mr. Roberts to the SATP program and her explanation for transferring him to 15 barracks. At the summary judgment stage, Mr. Roberts' unsubstantiated beliefs and assertions that Defendant Ramsey retaliated against him are insufficient. "'When the movant makes a prima facie showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne*, 11 S.W.3d 531, 539 (2000)).

There is no evidence to allow a reasonable fact finder to conclude that Defendant Ramsey engaged in constitutionally prohibited retaliatory conduct. Accordingly, Defendant Ramsey is entitled to qualified immunity on Mr. Roberts' retaliation claim.

### b.    Defendant Harmon

Defendants also provide Defendant Harmon's declaration in support of their motion for summary judgment. *Doc. 150-4*. Defendant Harmon explains that, on October 14, 2020, Mr. Roberts refused to move to 13 barracks claiming that he had a known enemy ("TK") in that barracks. *Id. at 1*. On the same day, Mr. Roberts filed grievance GR-20-752 complaining that Defendant Wilson (*not Defendant Harmon*) attempted to move him to 13 barracks. *Id*. Defendant Harmon signed the grievance and investigated Mr. Roberts' claims. *Id. at 2*. Defendant Harmon was unable to identify inmate "TK" and, after reviewing all evidence, determined that Mr. Roberts had lied to staff in order to remain housed in 12 barracks. *Id. at 3*. As a result, Defendant Harmon charged Mr. Roberts with a disciplinary. *Id*. When he made this decision, Defendant Harmon did not know that Mr. Roberts had filed an earlier grievance alleging the Grimes Unit had insufficient security. *Id*.

In his deposition, Mr. Roberts conclusively stated, without any factual support, that Defendant Harmon retaliated against him after he submitted grievance GR-20-752 by issuing him a false disciplinary. *Doc. 150-1 at 11*. The Court

acknowledges that Mr. Roberts was found "not guilty" of this particular disciplinary. *Doc. 150-21 at 3*. However, this is not enough alone to support a finding of retaliation.

To avoid summary judgment, Mr. Roberts must present "affirmative evidence of a retaliatory motive." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007); *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006). Instead, he relies solely on his speculative and conclusory allegations. This is insufficient. See *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) ("Merely alleging that an act was retaliatory is insufficient."); *Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 733 (W.D. Tenn. 1999) ("an inmate cannot immunize himself from adverse administrative action by prison officials merely by filing grievances and then claiming that everything that happens to him is retaliatory").

There is no evidence to allow a reasonable fact finder to conclude that Defendant Harmon engaged in constitutionally prohibited retaliatory conduct. Accordingly, Defendant Harmon is entitled to qualified immunity on Mr. Roberts' retaliation claim.

### c.    Defendant Wilson

Defendants also provide Defendant Wilson's declaration in support of their motion for summary judgment. *Doc. 150-25*. According to Defendant Wilson, on October 26, 2020, he observed one inmate striking another in 7 barracks. *Id. at 2*.

Inmate Trammel Moore came to the door and told Defendant Wilson that he had been in an altercation with another inmate. *Id*. Defendant Wilson identified the other inmate involved in the incident as Mr. Roberts. *Id*. As a result, Defendant Wilson charged Mr. Roberts with a disciplinary violation for using force against another inmate. *Id*. When he made this decision, Defendant Wilson did not know that Mr. Roberts had filed an earlier grievance alleging the Grimes Unit had insufficient security. *Id*.

In his deposition, Mr. Roberts initially conceded that Defendant Wilson did not retaliate against him for filing grievance GR-20-677. *Doc. 150-1 at 10*. Rather, Defendant Wilson allegedly falsified the disciplinary at issue in order to conceal any security issue at the Grimes Unit. *Id*. Mr. Roberts later changed his testimony, concluding that Defendant Wilson retaliated against him for using the grievance procedure. *Id. at 13*.

Again, Mr. Roberts fails to provide any evidence contradicting Defendant Wilson's sworn explanation for why he issued the disciplinary. Mr. Roberts' unsubstantiated beliefs and speculation that Mr. Wilson was motivated by retaliation are insufficient to avoid summary judgment.

In addition, an impartial decision maker found Mr. Roberts guilty of the disciplinary at issue. *Doc. 150-22 at 2*. A retaliation claim fails, as a matter of law,

if there was "some evidence" to support the disciplinary conviction. *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 1994).

There is no evidence to allow a reasonable fact finder to conclude that Defendant Wilson engaged in constitutionally prohibited retaliatory conduct. Accordingly, Defendant Wilson is entitled to qualified immunity on Mr. Roberts' retaliation claim.

### d. Defendants Morton and Baker

Defendants provide Defendant Morton's declaration in support of their motion for summary judgment. *Doc. 150-23*. Defendant Morton testifies that, during the time period relevant to this lawsuit, she served as a disciplinary officer at the Grimes unit. *Id. at 1*. As a disciplinary officer, her role was to ensure that Mr. Roberts was properly and timely notified of all disciplinaries filed against him. *Id*. During this time period, she served Mr. Roberts with three disciplinaries. *Id. at 2-3*. When she did, she was unaware that Mr. Roberts had filed an earlier grievance alleging the Grimes Unit had insufficient security. *Id at 3*.

During deposition, Mr. Roberts initially conceded that Defendants Baker and Morton did not retaliate against him for filing grievance GR-20-677, but alleged they retaliated against him based on Mr. Roberts' complaint regarding inadequate security at the Grimes Unit, the subject of grievance GR-20-677. *Doc. 150-1 at 9*. He explained that these Defendants falsified his disciplinary papers to "cover [] up"

16

any security problems at the Grimes Unit. *Id*. Mr. Roberts argued that, had his barracks been sufficiently staffed, ADC staff would have been able to observe his altercation with the other inmate. *Id*. Again, Mr. Roberts later contradicted his own testimony, explaining that these Defendants retaliated against him for his use of the grievance process.

Although Defendants do not provide Defendant Baker's declaration to the Court in support of their motion, based on Defendant Morton's declaration, as well as Mr. Roberts' testimony, no reasonable fact finder could conclude that either Defendant falsified Mr. Roberts' disciplinary papers out of retaliatory motive. Rather, based on the undisputed evidence, Defendant Morton simply provided Mr. Roberts his disciplinary papers. Mr. Roberts fails to come forward with: (1) any evidence contradicting Defendant Morton's testimony; or (2) any factual support that Defendant Baker engaged in unlawful retaliation. Mr. Roberts' unsubstantiated beliefs and assertions that Defendants Morton and Baker retaliated against him are insufficient. As a result, Defendants Morton and Baker also are entitled to qualified immunity on Mr. Roberts' retaliation claims against them.

There is no evidence to allow a reasonable fact finder to conclude that either Defendant Morton or Baker engaged in constitutionally prohibited retaliatory conduct. Accordingly, both Defendants are entitled to qualified immunity on Mr. Roberts' retaliation claim.

### 3. Claims For Failure to Train or Supervise Against Defendants Payne, Young, Page

A prison supervisor can be held liable for failing to properly supervise or train subordinates where that failure causes harm. Likewise, if supervisors become aware of a constitutional violation and fail to take corrective action, they can be held liable for their own acts or omissions. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993).

To prove his failure to supervise claim, Mr. Roberts must produce evidence that Defendants Payne, Young, and Page "(1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused the injury." *Parrish*, 594 F.3d at 1002; *Otey v. Marshall*, 121 F.3d 1150, 1156 (8th Cir. 1997). Notably, a "single incident, or series of isolated incidents, usually provides an insufficient basis upon which to assign supervisor liability." *Lenz v. Wade*, 490 F.3d 991, 995-96 (8th Cir. 2007).

Because no reasonable fact finder could conclude that Defendants Ramsey, Harmon, Wilson, Morton, or Baker retaliated against Mr. Roberts, Defendants Payne, Young, and Page are entitled to summary judgment on Mr. Roberts' failure to supervise claim. In the absence of an unconstitutional act by a subordinate, there can be no related supervisory liability. *See Mendoza v. United States Immigration &*

18

*Customs Enforcement*, 849 F.3d 408, 420 (8th Cir. 2017) (supervisory liability claims "automatically fail for lack of an underlying constitutional violation"); *Schoettle v. Jefferson County*, 788 F.3d 855, 861-62 (8th Cir. 2015) ("We have long held that neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim."); *Williams v. Davis*, 200 F.3d 538, 539 (8th Cir. 2000) ("Absent a constitutional violation, there [is] no basis for section 1983 liability on the part of [supervisors].").[7]

Defendants Payne, Young, and Page are entitled to qualified immunity on Mr. Roberts' failure to supervise claims.

## V.    <u>Conclusion</u>:

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' motion for summary judgment (*Doc. 150*) be GRANTED.

2.    Mr. Roberts' remaining claims be DISMISSED, with prejudice.

---

[7] While it is unnecessary to continue the analysis further, Defendants have submitted evidence to show that none of these three Defendants ever even received notice of an alleged pattern of unconstitutional acts committed by subordinates or engaged in deliberate indifference that would even arguably subject them to liability. For example, Defendants provide a declaration from Defendant Young, who in his role as Chief Security Officer, reviewed all the disciplinaries Mr. Roberts received during the relevant time frame and determined that existing evidence supported referring each disciplinary for a hearing before an impartial decision-maker. Defendant Young was never made aware of any specific instance in which ADC allegedly retaliated against Mr. Young. *Doc. 150-24 at 2-3.* Defendant Page submits a declaration stating that he never learned about any specific retaliation against Mr. Roberts, either from Mr. Roberts himself or any other ADC employee. *Doc. 150-6 at 4.*

3.    The Clerk be instructed to close this case.

Dated this 8th day of December, 2022.

_____
UNITED STATES MAGISTRATE JUDGE